[No. 7625-3-III. Division Three. June 11, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES D. BOWEN, *Appellant*.

[5]Basin's request for attorney fees on appeal is denied.

*James D. Bowen,* pro se, and *Clinton J. Henderson,* for appellant (appointed counsel for appeal).

*Joshua F. Grant, Prosecuting Attorney,* for respondent.

MUNSON, J.—Dr. James D. Bowen appeals his conviction for indecent liberties, contending the trial court erroneously allowed introduction of two prior sexual assaults under ER 404(b). We agree and reverse and remand for a new trial.

Dr. Bowen was charged with one count of committing indecent liberties on Rhonda Gettemy, a patient. Mrs. Gettemy, who is mildly retarded, had become acquainted with Dr. Bowen because of his medical treatment of her small

children; she considered him her family doctor. Through this relationship, Dr. Bowen knew Mrs. Gettemy was separated from her husband.

At trial, Mrs. Gettemy testified Dr. Bowen unexpectedly visited her at her home on May 24, 1985, ostensibly for a medical checkup on one of her children. Upon entering her house, she testified he put one hand around her shoulder and the other hand down her shirt and under her bra. He stopped after she said "don't" and struggled to get away. Afterward, he followed her into her bedroom where one of the children was sleeping so he could allegedly examine the child. She testified that once there he again touched her breast and also put his hand down her pants. He stopped after she mentioned the child's medical problems.

The State, as part of its case in chief, introduced the testimony of two of Dr. Bowen's former patients. One testified that 2 months prior to the charged incident, Dr. Bowen had put his hands into her bra and touched her breast. At the time of that incident, she was a patient of Dr. Bowen's and he knew she was separated from her husband. No criminal charges were filed as a result of that incident.

A second witness, a resident of Battleground, also testified she was a patient of Dr. Bowen about a year before this incident. She too was separated from her husband when he visited her at her home, ostensibly for medical reasons. Once inside her house, she testified he put his hand down her shirt and grabbed her breast. No charges were brought.

The trial court, over defense counsel's objection, admitted this testimony under ER 404(b) stating the two prior uncharged assaults were sufficiently similar to the charged crime to be relevant in showing (1) Dr. Bowen's motive, (2) common plan or scheme, and (3) the absence of mistake or accident. Although the court failed to extensively set out its reasons for admitting the prior acts (*see State v. Jackson*, 102 Wn.2d 689, 689 P.2d 76 (1984)), it did note:

> Relevant evidence, which this is, is under the Rules of Evidence, and can be damaging to the defendant in this situation; there is no question about that. That's clear.

And, as I say, by exercising my discretion, I have determined that it is appropriate in this case, and I will permit it in.

Prior to these two witnesses testifying, the court gave a cautionary instruction stating that the jury could consider the prior sexual assaults only for one of the limited purposes stated above. The jury convicted Dr. Bowen; this appeal followed.

Dr. Bowen contends the trial court erred when it admitted the prior uncharged sexual assault acts under ER 404(b). ER 404(b) provides:

> **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In determining whether evidence of other crimes, wrongs, or acts was properly admitted under ER 404(b), the court first must analyze whether the evidence is logically relevant to prove an "essential ingredient" of the charged crime rather than simply to show the defendant had a propensity to act in a certain manner which he followed on that particular occasion. *State v. Saltarelli*, 98 Wn.2d 358, 362–63, 655 P.2d 697 (1982). Second, the court must determine whether the evidence of other criminal acts is legally relevant, *i.e.*, whether the probative value of the evidence is substantially outweighed by its prejudicial effect. Third, if the evidence is admitted, the court must limit the purpose for which it may be considered by the jury. *See State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986). Whether the proffered evidence meets the above criteria is a discretionary determination made by the trial court; its decision will not be overturned absent a manifest abuse of discretion. *State v. Mak*, 105 Wn.2d 692, 702–03, 718 P.2d 407, *cert. denied*, 107 S. Ct. 599 (1986); *State v. Robtoy*, 98 Wn.2d 30, 42, 653 P.2d 284 (1982). Nonetheless, "'[i]n

doubtful cases the scale should be tipped in favor of the defendant and exclusion of the evidence.'" *Smith,* at 776 (quoting *State v. Bennett,* 36 Wn. App. 176, 180, 672 P.2d 772 (1983)).

The trial court errs when it does not conduct the above analysis on the record. *Smith,* at 776; *Jackson,* at 694; *Saltarelli,* at 361; *State v. Tharp,* 96 Wn.2d 591, 597, 637 P.2d 961 (1981). The trial court's failure to articulate its balancing process is harmless error however where the record as a whole is sufficient to allow effective appellate review of the trial court's decision. *Tharp,* at 600; *State v. Gogolin,* 45 Wn. App. 640, 645, 727 P.2d 683 (1986); *State v. Mahmood,* 45 Wn. App. 200, 212–13, 724 P.2d 1021 (1986). Although the trial court here failed to make more than a superficial analysis on the record, the record on appeal is sufficient to allow this court to independently determine whether the evidence was admissible under ER 404(b) since the trial court identified the purposes under which it admitted the evidence. *Cf. Smith,* at 776–77; *Jackson,* at 694.

█ The court's first reason for admitting the testimony relating to the prior sexual assaults was that it was relevant to show Dr. Bowen's "motives" for committing indecent liberties upon Mrs. Gettemy. Motive is defined as "'[a]n inducement, or that which leads or tempts the mind to indulge a criminal act.'" *Saltarelli,* at 365 (quoting *State v. Tharp, supra*). These prior acts cannot be said to have motivated or induced Dr. Bowen to commit indecent liberties on a different woman, at a later time.[1] In the absence of any explanation by the trial court or the prosecution as to how this evidence was logically relevant to motive, the evidence demonstrates little more than a general propensity to commit indecent liberties, precisely the purpose forbidden under ER 404(b). *Saltarelli,* at 365; *see also Jackson,*

---

[1]For an example of the proper admission of other acts to demonstrate motive, *see State v. Cummings,* 44 Wn. App. 146, 152, 721 P.2d 545, *review denied,* 106 Wn.2d 1017 (1986). There, evidence of the defendant's prior discovery and theft of money from the victim's house was relevant to the defendant's motive for later being in the victim's house the day it was ransacked in a search for money.

at 695.

The court also admitted the prior acts evidence on the basis it tended to show Dr. Bowen's perpetration of the acts on Mrs. Gettemy were part of a "common scheme or plan." The State argues admission of the evidence was justifiable under common scheme or plan because, *inter alia,* all three victims were Dr. Bowen's patients and all three had disclosed during the course of the medical relationship that they were separated from their husbands. Thus, because the three incidents were substantially similar in nature, the two prior incidents should be used to infer Dr. Bowen also committed the acts against Mrs. Gettemy.

■ However, common scheme or plan refers to a larger criminal design of which the charged crime is only one part. *People v. Barbour,* 106 Ill. App. 3d 993, 436 N.E.2d 667, 672 (1982); E. Cleary, *McCormick on Evidence* § 190, at 559 (3d ed. 1984). As noted in *State v. Goebel,* 40 Wn.2d 18, 21, 240 P.2d 251 (1952):

> [T]he scope of [the common plan] exception is limited to evidence which shows some causal connection between the two offenses, so that proof of the other offense could be said to evidence a pre–existing design, system, plan, or scheme directed toward the doing of the very act charged.

*See also State v. Harris,* 36 Wn. App. 746, 751, 677 P.2d 202 (1984) (quoting Slough & Knightly, *Other Vices, Other Crimes,* 41 Iowa L. Rev. 325, 329–30 (1956)).

■ Here, there was no showing any of the assaults were part of an overarching design or plan. Although the evidence was introduced under the label "common scheme or plan," the correct exception under ER 404(b) for admission of the evidence, based on the State's theory, was "modus operandi" since the prior assaults were introduced on the theory that they were peculiarly similar to the charged crime. *State v. Irving,* 24 Wn. App. 370, 374, 601 P.2d 954 (1979), *review denied,* 93 Wn.2d 1007 (1980); *State v. Whalon,* 1 Wn. App. 785, 792, 464 P.2d 730 (1970); R. Lempert & S. Saltzburg, *A Modern Approach to Evidence*

227 (1982) (characterizing such evidence as distinctive modus operandi rather than common plan or scheme is "more accurate"). Although "common plan" and "modus operandi" are sometimes used interchangeably, the concepts are quite distinguishable; modus operandi refers to a pattern of criminal conduct in which the method of perpetration is so distinctive that separate crimes are recognizable as the handiwork of one person by their characteristic "signature." *Irving,* at 374 notes:

> In order to utilize this principle the facts of both crimes must be "so similar and peculiar in nature as to show a modus operandi." *State v. Whalon, supra* at 792. Professor Meisenholder describes the basic requirement as:
>
>> Mere similarity of crimes will not justify the introduction of other criminal acts under the rule. There must be something distinctive or unusual in the means employed in such crimes and the crime charged.
>
> (Footnotes omitted.) 5 R. Meisenholder, Wash. Prac. § 4, at 13 (1965).
>
> Furthermore, the primary purpose of the modus operandi principle is to corroborate the *identity* of the accused as the person who likely committed the offense charged. *State v. Whalon, supra.*

Here, the identity of Dr. Bowen as the alleged perpetrator of the indecent liberties was never in question. He did not deny visiting Mrs. Gettemy at the time or place in question. Rather, he denied committing the acts constituting the charged offense. In the absence of the necessity to prove identity, the points of similarity between the acts are not so distinctive as to overcome the prejudicial effect of admitting evidence of the prior sexual assaults. *See Irving,* at 376; *Barbour,* 436 N.E.2d at 672–73.

The trial court also admitted the evidence of the prior acts to demonstrate Dr. Bowen's touching of Mrs. Gettemy's private parts was not an accident or mistake. However, Dr. Bowen's defense was one of general denial. He denied touching Mrs. Gettemy's private parts, even accidentally. In the absence of his assertion of such a defense, the State may not introduce such evidence to show the

touchings were not accidental or by mistake. *Jackson,* at 695; *State v. Ramirez,* 46 Wn. App. 223, 228, 730 P.2d 98 (1986); *Harris,* at 751–52; Comment, *Admission of Evidence of Other Misconduct in Washington To Prove Intent or Absence of Mistake or Accident: The Logical Inconsistencies of Evidence Rule 404(b),* 61 Wash. L. Rev. 1213, 1223 (1986).

Nonetheless, the State argues, for the first time on appeal, the evidence was relevant to show Dr. Bowen intentionally committed indecent liberties with Mrs. Gettemy under the "doctrine of chances." We consider the State's argument because the trial court's admission of evidence on an incorrect basis does not constitute error if a proper, although unrecognized, basis exists for admitting the evidence. *State v. Cummings,* 44 Wn. App. 146, 152, 721 P.2d 545, *review denied,* 106 Wn.2d 1017 (1986). The doctrine of chances has been described as

> [t]he only theory of logic under which evidence of other misconduct is directly relevant to prove intent or absence of mistake or accident, without relying on character inferences . . . The doctrine of chances is based entirely on probabilities. Its foundation is the instinctive recognition that the odds against an innocent person being repeatedly involved in similar suspicious circumstances increase with each incident. At some point of recurrence, the similar repeated acts can no longer be viewed as coincidental. When the evidence reaches such a point, the recurrence of a similar unlawful act tends to negate accident, inadvertence, good faith, or other innocent mental states, and tends to establish by negative inference the presence of criminal intent.

(Footnotes omitted.) Comment, 61 Wash. L. Rev. at 1225–26. *See also* 2 J. Wigmore, *Evidence* § 302, at 241 (rev. 1979). The doctrine of chances is relevant to demonstrate absence of mistake or intent. However, as noted, absence of mistake or accident was not in issue.

Likewise, the prior assaults were not relevant to show Dr. Bowen possessed an "evil" intent when he touched Mrs. Gettemy. Although the issue of a defendant's intent is

almost always formally in dispute, in this case, proof of Dr. Bowen's intent follows from the testimony that he reached inside Mrs. Gettemy's clothes and touched her private parts. Because intent was not a material issue, the prior acts were not admissible to demonstrate intent. *Saltarelli,* at 366; *State v. Guthrie,* 185 Wash. 464, 56 P.2d 160 (1936); *State v. Smith,* 103 Wash. 267, 268, 174 P. 9 (1918); *Ramirez,* at 227; J. Wigmore § 357, at 334; R. Lempert & S. Saltzburg, at 224; Comment, 61 Wash. L. Rev. at 1221–23; 5 K. Tegland, Wash. Prac., *Evidence* § 119, at 295–96 (2d ed. 1982).

 Because evidence of the prior touchings of two other women was not admissible under any of the exceptions in ER 404(b), the trial court abused its discretion in admitting that evidence. Evidentiary errors under ER 404(b) are not of constitutional magnitude. *Jackson,* at 695. Therefore, in determining whether the error was harmless, the question is whether within reasonable probabilities, the outcome of the trial would have been different had the error not occurred. *Robtoy,* at 42. In making this determination, we briefly discuss why the improper introduction of prior acts of misconduct is prejudicial.

First, such evidence is highly prejudicial because the possibility exists that the jury "will vote to convict, not because they find the defendant guilty of the charged crime beyond a reasonable doubt, but because they believe the defendant deserves to be punished for a series of immoral actions." R. Lempert & S. Saltzburg, at 218. Second, the jury may place undue weight or "overestimate" the probative value of the other prior acts. R. Lempert & S. Saltzburg, at 219; Comment, 61 Wash. L. Rev. at 1216–17. Overestimation problems are especially acute where the prior acts are similar to the charged crime. *State v. Anderson,* 31 Wn. App. 352, 356, 641 P.2d 728, *review denied,* 97 Wn.2d 1020 (1982); *cf. State v. Pam,* 98 Wn.2d 748, 761, 659 P.2d 454 (1983) (prejudice arising from introduction of prior convictions which are similar to the charged crime is great since the jury is likely to believe "if he did it before

he probably did so this time"). Finally, introduction of other acts of misconduct inevitably shifts the jury's attention to the defendant's general propensity for criminality, the forbidden inference; thus, the normal "presumption of innocence" is stripped away.[2] R. Lempert & S. Saltzburg, at 219; Comment, 61 Wash. L. Rev. at 1216. Applying these rationales to the circumstances here, we cannot state the admission of the prior sexual assault evidence was harmless and thus reverse.[3]

Given our decision to reverse under ER 404(b), we need not address Dr. Bowen's pro se contentions, other than to note we find his contention of ineffective representation of counsel without merit.

Reversed and remanded for new trial.

THOMPSON, A.C.J., and GREEN, J. concur.

---

[2]Although the trial court cautioned the jury with respect to prior acts evidence, that instruction has little efficacy where the evidence is erroneously introduced in the first place. *See State v. Miles,* 73 Wn.2d 67, 71, 436 P.2d 198 (1968).

[3]Dr. Bowen also argues the court erred in admitting testimony relating to the low IQ of Mrs. Gettemy. However, the nature of Mrs. Gettemy's mental disability was relevant in that it helped the jury obtain a complete picture concerning the circumstances surrounding the alleged acts. Introduction of this evidence was not error.