[No. 9328-0-III.   Division Three.   December 28, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. KING ARTHUR BRADFORD, *Appellant.*

*Daniel Arnold,* for appellant.

*Andrew K. Miller, Prosecuting Attorney,* and *Jeffrey Finney, Deputy,* for respondent.

SHIELDS, J.—King Arthur Bradford was found guilty of second degree burglary and sentenced to 4 months in jail. He appeals; we affirm.

On January 3, 1988, Ronald Sharp, an employee with Moon Security, conducted a stakeout at Valley Quality Mobile Homes in Kennewick. There had been previous burglaries at the mobile home lot in which display model homes were broken into and furniture and appliances stolen. At approximately 1:30 a.m., Mr. Sharp saw two men wearing baseball caps enter the lot, twist the doorknob off a mobile home and enter it. He called the police, but the two suspects fled the scene before the police arrived. Mr. Sharp

gave a description of the men and their small blue pickup to a Kennewick police officer.

On January 15, 1988, Tim Strope, an employee at a Kennewick convenience store, overheard a message on the police radio to be on the lookout for a small blue pickup. At approximately 2 a.m., Mr. Strope spotted a small blue pickup parked outside the convenience store. The occupants of the vehicle, a black man and a white woman, entered the store, but left without making a purchase. Mr. Strope contacted the police and gave them the number of the license plate of the vehicle, Oregon license FMY 547.

On January 18, 1988, Ronald Crutcher, a police officer with the Oregon State Police, was called to a burglary in progress at the Oregon Trail Mobile Home lot near Hermiston, Oregon. The owner of the lot had been keeping guard during the night because of burglaries to his display mobile homes. The owner saw someone break into one of them. He shot at the suspect's vehicle, and the suspect fled on foot. Officer Crutcher approached the vehicle which had been left behind. It was a small blue pickup with Oregon license FMY 547. King Arthur Bradford was found crouched inside. Burglary tools were also found in the pickup. A short while later, Eddie Reynolds was apprehended. The next day, a pair of ChannelLock pliers was found near the scene.

Ken Taylor, a detective with the Kennewick Police Department, heard of the Oregon burglary and contacted police in Oregon. Prior to this time, the Kennewick police had no suspects in the burglary of the Kennewick mobile home lot. Detective Taylor traveled to Oregon, and observed the blue pickup with license plate FMY 547. He obtained pictures of King Arthur Bradford and Eddie Reynolds and composed a photo montage consisting of six photos, all of black male subjects with similar physical characteristics. On January 20, 1988, Detective Taylor

showed the photo montage to Mr. Sharp, who identified Mr. Bradford and Mr. Reynolds as the two subjects he had observed in the Kennewick burglary. Mr. Strope also identified Mr. Bradford from the photo montage as an occupant of the blue pickup observed at the convenience store on January 15.

Prior to trial, Mr. Bradford's motion to exclude evidence relating to the burglary arrest in Hermiston was denied.[1] Mr. Bradford contends the denial was error for two reasons: (1) under ER 404(b) a prior act may be admitted, but not a subsequent one, and (2) the evidence was not properly admitted absent a balancing by the trial court on the record of its relevance against possible prejudice to the defendant. *State v. Tharp*, 96 Wn.2d 591, 637 P.2d 961 (1981). *Tharp* is not dispositive because it considered *uncharged* crimes which are admissible if they are a part of an unbroken sequence of events. Here, the evidence is of a crime that occurred after the charged crime admitted to prove identity.

First, ER 404(b)[2] applies to evidence of other crimes or acts regardless of whether they occurred before or after the alleged crime for which the defendant is being tried. *State v. Laureano*, 101 Wn.2d 745, 764, 682 P.2d 889 (1984), *overruled on other grounds in State v. Brown*, 111 Wn.2d 124, 761 P.2d 588 (1988), *adhered to on rehearing*, 113 Wn.2d 520, 782 P.2d 1013 (1989). *See also* 5 K. Tegland, Wash. Prac., *Evidence* § 114, at 386 (1989).

---

[1]Mr. Reynolds was tried separately.

[2]ER 404(b) provides:
"**Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

■■ Second, the court did not articulate its balancing process to determine legal relevance on the record.[3] However, the record as a whole is sufficient to allow effective appellate review of the court's determination of the matter. As we stated in *State v. Bowen,* 48 Wn. App. 187, 190–91, 738 P.2d 316 (1987):

> In determining whether evidence of other crimes, wrongs, or acts was properly admitted under ER 404(b), the court first must analyze whether the evidence is logically relevant to prove an "essential ingredient" of the charged crime rather than simply to show the defendant had a propensity to act in a certain manner which he followed on that particular occasion. Second, the court must determine whether the evidence of other criminal acts is legally relevant, *i.e.,* whether the probative value of the evidence is substantially outweighed by its prejudicial effect. Third, if the evidence is admitted, the court must limit the purpose for which it may be considered by the jury. Whether the proffered evidence meets the above criteria is a discretionary determination made by the trial court; its decision will not be overturned absent a manifest abuse of discretion. . . .
>
> The trial court errs when it does not conduct the above analysis on the record. The trial court's failure to articulate its balancing process is harmless error however where the record as a whole is sufficient to allow effective appellate review of the trial court's decision.

(Citations omitted.) The record reflects numerous similarities between the Hermiston and Kennewick burglaries of logical relevance to prove an essential element of the crime charged: the identity of Mr. Bradford as the perpetrator of the Kennewick crime. *Brown,* 113 Wn.2d at 527, 111 Wn.2d at 130; *Bowen,* at 190. Both crimes were committed by two black males with one or both of them wearing baseball caps; both occurred at night in a mobile home display lot; both involved suspects who drove a small blue pickup; and, both involved use of ChannelLock pliers to twist off the doorknobs to gain entrance. This evidence of distinctive

---

[3]The State contends a complete discussion concerning the probative and prejudicial effects of this evidence was discussed in chambers. It is better practice to have a court reporter present during such in camera proceedings so that the balancing can be made part of the record.

similarities in modus operandi between the Hermiston and the Kennewick burglaries was important in corroborating the identity of Mr. Bradford. This supplies its legal relevance: it was of consequence to the outcome of the action which made the identification of Mr. Bradford as the perpetrator more probable. *Brown,* 113 Wn.2d at 527, 111 Wn.2d at 130. This outweighs any prejudice to Mr. Bradford.

In *Brown,* 113 Wn.2d at 527–28, 111 Wn.2d at 131, the court concluded the similarities between the method employed in Brown's prior crimes and the charged crime satisfied the requirement that the method employed in the charged crime be so distinctive that proof Brown committed the prior crimes created a high probability that he committed the charged crime.[4] In *State v. Jenkins,* 53 Wn. App. 228, 237, 766 P.2d 499, *review denied,* 112 Wn.2d 1016 (1989), similarities not individually unique, taken together, were held far from coincidental and, absent dissimilarities between the crimes, created probability that the same person committed them. The determination whether the prior or subsequent offense is similar enough to the charged crime to warrant admission is left to the discretion of the trial court. The trial court did not abuse its discretion in admitting this evidence. *Jenkins,* at 236. Finally, the court properly instructed the jury, limiting the use of the Oregon arrest to the issue of identity only. *Bowen,* at 190.

██ Exhibits in this case, including the photo montage, the doorknobs and the ChannelLock pliers, were lost after

---

[4]The present case differs factually from *State v. Bowen, supra,* in which this court held similarities between the crimes in that case were not logically relevant to show motive or common plan or scheme. The evidence in *Bowen* was not admitted to corroborate or prove identity, as it is here; identity was not an issue. *Bowen,* at 193, stated, "In the *absence* of the necessity to prove identity, the points of similarity between the acts are not so distinctive as to overcome the prejudicial effect of admitting evidence of the prior sexual assaults." (Italics ours.) *Brown* and *Bowen* illustrate how evidence of similarities between other crimes and the charged crime must be "distinctive", depending on the objective sought by its introduction.

the trial[5] when they were sent to Oregon for Mr. Bradford's subsequent prosecution there. Mr. Bradford contends the photo montage was impermissibly suggestive, and an effective, independent appellate review of the montage is now not possible because the exhibit has been lost. Determination of the validity of an identification procedure is a question of fact for the jury. *State v. Hanson,* 46 Wn. App. 656, 664, 731 P.2d 1140, *review denied,* 108 Wn.2d 1003 (1987). Mr. Bradford argued to the jury the photo montage was suggestive. The jury apparently did not agree. During the hearing on the motion for new trial, the argument was renewed. The trial judge also expressed his opinion the photo montage was not suggestive. Independent of the identification of Mr. Bradford through the use of the photo montage, both Mr. Sharp and Mr. Strope were able to make an in-court identification of Mr. Bradford. The loss of the exhibit is not material to our review.

■ Finally, Mr. Bradford contends he was denied effective assistance of counsel because (1) his counsel did not object to the admission of hearsay testimony concerning the discovery and location of the ChannelLock pliers in Oregon, and (2) his counsel stipulated to the chain of custody of the doorknobs and pliers sent to Jonathan Spilker, a criminologist with the Oregon State Police, for his analysis. The test for determining whether defendant's counsel was ineffective is set out in *State v. Fleck,* 49 Wn. App. 584, 588, 744 P.2d 628 (1987) (citing *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)), *review denied,* 110 Wn.2d 1004 (1988) as follows: (1) whether counsel's performance fell below an objective standard of reasonableness, and (2) whether this deficiency prejudiced the defendant.

■ The hearsay testimony of which Mr. Bradford complains establishes the ChannelLock pliers were found a

---

[5]The loss of the exhibits was through no fault of the State. They were sent to Oregon with the consent of both the trial court and Mr. Bradford's counsel.

short distance from where Mr. Reynolds was arrested.[6] This testimony tends to implicate Mr. Reynolds more than Mr. Bradford. Defense counsel's failure to object to the hearsay testimony was a tactical decision on his part. Failure of a strategy to gain acquittal is insufficient to constitute ineffective assistance of counsel. *In re Richardson,* 100 Wn.2d 669, 675, 675 P.2d 209 (1983).

Both defense counsel and Mr. Bradford stipulated to the chain of custody of the ChannelLock pliers and doorknobs only after it was ascertained Detective Anderson from Oregon would be available to testify as to the chain of custody.[7] Mr. Bradford made his independent decision to stipulate to the chain of custody only after both his counsel and the judge discussed the matter with him. Under the circumstances, defense counsel's performance did not fall below an objective standard of reasonableness.

The judgment of the Superior Court is affirmed.

THOMPSON, C.J., and GREEN, J., concur.

---

[6]The record stated:

"[Officer Crutcher:] . . . We learned that Mr. Connor had located a set of ChannelLock pliers just a short distance away from his lot in a ditch headed north toward where Mr. Reynolds was arrested that night."

[7]Detective Taylor sent the doorknob from the mobile home which had been burglarized in Kennewick to Detective Anderson in Oregon. Detective Anderson sent that doorknob, along with the doorknob from the mobile home burglarized in Hermiston, Oregon, and the ChannelLock pliers found at the scene in Hermiston, to Mr. Spilker. Mr. Spilker determined that the damage done to both the doorknobs from Kennewick and Hermiston were consistent with the ChannelLock pliers found at the Hermiston crime scene.