
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 70054-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW BLAIR SMITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 25, 2014 |
| | ) | |

LAU, J. — Matthew Smith appeals his conviction for felony violation of a no-contact order, charged as a domestic violence offense. He argues that he was denied a fair trial because the trial court erroneously instructed the jury that domestic violence is an element of the offense, the court's reasonable doubt instruction diluted the State's burden of proof, and prejudicial photographs were improperly admitted. Because Smith failed to show prejudicial error and overwhelming evidence supported Smith's conviction, we affirm. And because the parties agree that the judgment and sentence shows an assault conviction that was vacated on double jeopardy grounds, we remand with instructions to correct the judgment and sentence error.

FACTS

Matthew Smith and his girl friend, Cassandra Mitchell, were living separately due to a domestic violence no-contact order entered against Smith on July 30, 2012. Mitchell, who was pregnant with Smith's baby, was staying at his house while he lived elsewhere.

On the evening of October 3, 2012, Mitchell was giving her friend, Tashena Martin, a tattoo. Despite the no-contact order, Smith came over and they started drinking. Smith and Mitchell got into an argument. Smith and Mitchell went upstairs, and Martin fell asleep on the couch. Martin woke up to the sound of breaking glass. She heard Mitchell say, "He's hurting me" and "[H]e hit me." Report of Proceedings (Feb. 5 & 6, 2013) (RP) at 152. Martin did not see Smith hit Mitchell, but she heard "[t]wo things that sounded like a hit with like cursing, calling her names." RP at 152. Smith ran out the door. Just after midnight, Mitchell called 911 and reported that Smith had punched her in the stomach and head. Police arrived, and Mitchell was transported to the hospital by ambulance. Mitchell told the emergency room doctor that she had been hit in the stomach and head, and she complained of pain during the exam. At the hospital, Bellingham Police Officer Christopher Brown met with Mitchell, who hand wrote and signed a statement under penalty of perjury.

> Matthew came to the house he started drinking, after finishing a Bottle of liquor we got into a argument he said our baby wasn't his and hit me in the stomach when I turned around he also punched me in the back of my head he ran away because I told him I was calling the cops

Ex. 3.

Smith was charged by amended information with "FELONY VIOLATION OF A NO-CONTACT ORDER (DOMESTIC VIOLENCE), COUNT I AND ASSAULT IN THE

FOURTH DEGREE (DOMESTIC VIOLENCE) COUNT II."[1] The information further alleged that the offenses were "crime[s] of domestic violence, pursuant to RCW 9.94A.030 or; RCW 10.99.020 and RCW 26.50.010." At and prior to trial, Mitchell recanted her statements about Smith's assault.[2] She asserted that Smith never came to the house on October 3, 2012, and no assault occurred that evening or at any other time. She claimed that she fabricated the allegations because she wanted to take revenge on Smith for failing to return her telephone calls.

The State used Mitchell's written statement and a recording of the 911 call to impeach her credibility. Over Smith's objection, the trial court also admitted three photographs of Mitchell depicting shoulder injuries and one photograph showing a room with property damage and upended items in it. Police took these photographs on July 30, 2012, after Mitchell reported that Smith assaulted her.[3] She later denied this assault occurred. The trial court admitted the photographs for the limited purpose of helping the jury assess Mitchell's credibility on whether Smith violated the no-contact order when he assaulted her on October 3, 2012.

The jury found Smith guilty as charged, including the domestic violence allegation. Both to-convict instructions included as an element the domestic violence allegation. After trial, the trial court granted Smith's motion to dismiss the assault

---

[1] The assault elevated the no-contact order violation from a misdemeanor to a felony offense.

[2] Although Martin wrote a letter that corroborated Mitchell's recantation, she testified at trial that the letter was false and that she wrote it because Mitchell told her to. Mitchell denied this.

[3] The Bellingham Municipal Court issued a domestic violence no-contact order on July 30, 2012, based on this assault allegation. Ex. 2. The present conviction is based on Smith's violation of this order.

conviction on violation of double jeopardy grounds. Smith appeals his felony violation of a no-contact order conviction.

## ANALYSIS

### To-Convict Instructions

Smith argues for the first time on appeal that his due process rights were violated and he was denied a fair trial because the to-convict instructions incorrectly required the jury to find domestic violence as an element of the offenses.[4] He contends that the repeated use of this "pejorative" and "inflammatory" term throughout the instructions prejudiced him and denied him a fair trial. We reject Smith's argument on several grounds.

---

[4] Under RCW 9.94A.525(21), additional points are added to the offender score for prior offenses where a domestic violence allegation was pleaded and proven. Smith's briefing incorrectly cites to RCW 9.94A.535(21). The State pleaded the domestic violence allegation in order to increase Smith's sentence on any domestic violence offenses he may commit in the future. Smith does not dispute that the State must plead and prove that the charged offenses constitute domestic violence crimes for the purpose of RCW 9.94A.525(21)'s future offender score calculations.

> Mr. Smith recognizes that the statute requires the state to 'prove' the domestic violence designation in order to use it to increase punishment in a hypothetical future case. If the State seeks a jury finding on whether the offenses constitute a domestic violence crime for purposes of RCW 9.94A.535(21), that question can be posed in bifurcated instructions, decided after a verdict is returned on the underlying offense. State v. Oster, 147 Wn.2d 141, 147, 52 P.3d 26 (2002) (trial court did not abuse discretion by bifurcating instructions to require separate consideration of a prejudicial element); State v. Monschke, 133 Wn. App. 313, 34-35, 135 P.3d 966 (2006) (bifurcation necessary if unitary trial would significantly prejudice the defendant). Alternatively, although less desirable, the court could sanitize the designation by replacing the pejorative term 'domestic violence' crime with a statutorily accurate term such as 'crime against family or household member.' Cf. Old Chief v. United States, 519 U.S. 172, 191, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) (requiring acceptance of stipulation if defendant desires to sanitize evidence of prior conviction, which is an element of the offense).

Appellant's Br. at 9 n.2. Smith's bifurcation and sanitize approach to deal with the domestic violence allegation was never raised below.

First, Smith did not object to these instructions below. Jury instructions not objected to become the law of the case. State v. Salas, 127 Wn.2d 173, 182, 897 P.2d 1246 (1995). The rule is well settled. "In criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instructions." State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). Here, there is no dispute that the domestic violence allegation is not a statutory element of the felony violation of a no-contact order and fourth degree assault offenses. The court included the domestic violence allegation in the to-convict instructions without objection. These to-convict instructions became the law of the case. The State pleaded and proved the additional domestic violence element.

Smith also fails to demonstrate that the claimed instructional error involves a manifest constitutional error that may be raised for the first time on appeal under RAP 2.5(a)(3).

> To meet RAP 2.5(a) and raise an error for the first time on appeal, an appellant must demonstrate (1) the error is manifest and (2) the error is truly of constitutional dimension. Stated another way, the appellant must 'identify a constitutional error and show how the alleged error actually affected the [appellant's] rights at trial.'

State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (alterations in original) (citations omitted) (quoting State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007)). "A constitutional error is manifest if the appellant can show actual prejudice, i.e., there must be a 'plausible showing by the appellant that the asserted error had practical and identifiable consequences in the trial of the case.'" State v. Gordon, 172 Wn.2d 671, 676, 260 P.3d 884 (2011) (quoting O'Hara, 167 Wn.2d at 99).

Here, Smith makes no showing that the domestic violence element implicates a constitutional interest. He asserts that his due process rights were violated and his trial was not fair because the trial court did not give bifurcated instructions or use less prejudicial language in the instructions, such as crime "against a family or household member."[5] Appellant's Reply Br. at 4; see supra note 4. However, "[i]nstructional errors do not automatically constitute manifest constitutional error." State v. Guzman Nunez, 160 Wn. App. 150, 163, 248 P.3d 103 (2011). In the context of limiting the possible prejudice stemming from evidence of prior convictions, the Washington Supreme Court has "specifically held that such bifurcation is constitutionally permissible but not required." State v. Roswell, 165 Wn.2d 186, 197, 196 P.3d 705 (2008). Smith fails to establish that bifurcated instructions or use of less prejudicial language is constitutionally required here. For the reasons discussed above, we conclude it is not. Thus, the alleged error does not implicate a constitutional issue.

Smith also fails to show that the claimed instructional error is manifest. Essential to this determination is a plausible showing by Smith that the claimed error had practical and identifiable consequences at the trial. "In normal usage, "manifest" means unmistakable, evident or indisputable, as distinct from obscure, hidden or concealed. 'Affecting' means having an impact or impinging on, in short, to make a difference. A purely formalistic error is insufficient." State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

Smith's instructional error claim is not a manifest error affecting his constitutional rights. The alleged error here, viewed in the context of the whole trial, was not evident,

_____

[5] See supra note 2.

unmistakable, or indisputable. Smith failed to demonstrate "[s]ome reasonable showing of a likelihood of actual prejudice . . . ." Lynn, 67 Wn. App. at 346. It is this showing that makes a manifest error affecting a constitutional right. Lynn, 67 Wn. App. at 346.

The State pleaded the domestic violence allegation under RCW 9.94A.525 and was therefore required to prove it. Even without this added element, the State presented other evidence using the term "domestic violence" without objection from Smith. For example, the court admitted as an exhibit the domestic violence no-contact order entered against Smith on July 30, 2012. Ex. 2. The order stated:

> Based upon the certificate of probable cause and/or other documents contained in the case record, testimony, and the statements of counsel, the court finds that the Defendant has been charged with, arrested for, or convicted of a domestic violence offense, and further finds that to prevent possible recurrence of violence, this Domestic Violence No-Contact Order shall be entered pursuant to Chapter 10.99 RCW.

Ex. 2. It also identifies Smith's relationship with Mitchell as a "[c]urrent or former cohabitant as intimate partner." Ex. 2. Officer Brown testified that he gave Mitchell "D.V. [domestic violence] assault risk questions" and a "D.V. pamphlet" as part of the standard protocol. RP at 133. There is no evidence indicating that the claimed error may have in fact affected Smith's constitutional rights.[6] The claimed error appears to be purely abstract and theoretical. Smith has failed to point to any practical consequences

---

[6] Following oral argument and in response to questions regarding review under RAP 2.5(a)(3), Smith submitted a statement of additional authorities citing O'Hara and State v. Johnson, 100 Wn.2d 607, 623, 674 P.2d 145 (1983), overruled on other grounds by State v. Bergeron, 105 Wn.2d 1, 711 P.2d 1000 (1985). O'Hara states, "[A]ppellate courts should determine on a case-by-case basis whether an unpreserved claim of error regarding a self-defense jury instruction constitutes a manifest constitutional error." O'Hara 167 Wn. App. at 101. Johnson states, "[F]ailure to define every element of the offense charged ... is an error of constitutional magnitude and nondirection which may be raised for the first time on appeal." Johnson, 100 Wn.2d at 623. Neither opinion changes our analysis in this case.

which resulted from the claimed error. In sum, Smith fails to establish manifest constitutional error.[7]

But even if we assume Smith established a manifest constitutional error, the error is harmless. A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that the error did not contribute to the verdict obtained. State v. Brown, 147 Wn.2d 330, 344, 58 P.3d 889 (2002). From our review of the record evidence, we are persuaded beyond a reasonable doubt that the claimed error did not impact the verdict.

A crying and upset Mitchell called 911 minutes after the assault and reported that Smith hit her in the head and stomach and then left on foot. Mitchell gave 911 Smith's physical description and the clothing he wore. Police officers immediately recognized Smith from this description. Mitchell told 911 she had a no-contact order against Smith. Mitchell's friend Martin is heard on the 911 recording. Martin also told 911 that Smith came to the house drunk and punched Mitchell's head and stomach. Martin said that Mitchell had a no-contact order against Smith. At trial, Mitchell denied that Smith had been at the house and the assault. She admitted under direct examination that she told

---

[7] Smith relies on State v. Hagler, 150 Wn. App. 196, 208 P.3d 32 (2009). Hagler is distinguishable. Hagler appealed convictions for promoting prostitution, identity theft, unlawful firearm possession, and assault. Over objection, the trial court told the jury about the domestic violence designation for two of the charges and included the designation in the jury instructions. Hagler, 150 Wn. App. at 199. On appeal Hagler argued the domestic violence designation is prejudicial and unnecessary. We held the designation unnecessary, nonprejudicial in some circumstances, and any error was harmless. Hagler, 150 Wn. App at 202-03. Here, unlike Hagler, Smith failed to object to the domestic violence designation in the jury instructions and evidence presented at trial; agreed the State was entitled to plead and prove domestic violence offenses under RCW 9.94A.525(21), and proposed and received a lesser included instruction containing the domestic violence designation. But as in Hagler, the claimed error here is harmless.

the paramedics Smith punched her on the head and stomach. Mitchell claimed she lied about Smith's July 30, 2012 assault.[8] She also testified at trial that she and Smith are engaged and planned to marry. Officers arrested Smith when his sister drove him back to the house within a short time after the assault.

The emergency room doctor testified that Mitchell stated that she was hit numerous times with a fist, mostly on the head and stomach, and she also complained of pain in those areas. The doctor specified that lack of bruising does not prove there was no assault, as bruising may appear up to 24 hours later. Officer Brown interviewed Mitchell at the hospital within two hours of the incident. He testified that Mitchell told him what happened. She provided a written statement to Officer Brown about the assault that was consistent with the 911 call, the doctor's testimony, and Officer Brown's testimony. Despite her initial denial about the assault, Martin testified that Smith came to the house drunk that night, she heard Smith and Mitchell fighting, Mitchell said Smith hit her on the head and stomach before he fled, and Mitchell convinced her to write a false letter denying an assault occurred. And when police arrested Smith later that night, his physical appearance and clothing fit the description that Martin gave to the

---

[8] The trial record also shows, in response to the State's rigorous cross-examination, Mitchell provided the jury with a questionable explanation as to why she "lied" about the July 2012 and October 2012 assaults. For example, as to the July 30, 2012 photographs showing Mitchell's injuries and damage to the home's interior, Mitchell explained that she lied when she claimed Smith injured her and caused the property damage. When the prosecutor asked, "[W]hy were the police able to obtain photographs of your injuries if he never actually assaulted you?" Mitchell replied, "Well, I had those [injuries] from before." When asked about the damaged property and the television "pushed over on its face," Mitchell replied, "Um, well, the TV had been like that for awhile." When asked, "So that's just the way the house normally looks?" Mitchell replied, "Yeah." RP at 79.

911 dispatcher. As noted above, the court admitted the domestic violence no-contact order. Smith's challenge to the to-convict instructions fails.[9]

Reasonable Doubt Instruction

Smith next argues for the first time on appeal that the trial court's reasonable doubt instruction, Washington Pattern Jury Instructions: Criminal (WPIC) 4.01, diluted the State's burden of proof and denied him a fair trial. The Washington Supreme Court has directed trial courts to use WPIC 4.01. State v. Bennett, 161 Wn.2d 303, 317, 165 P.3d 1241 (2007). Smith claims that the "abiding belief in the truth" language encourages the jury to undertake an impermissible search for the truth. We disagree. State v. Fedorov, 181 Wn. App. 187, 324 P.3d 784 (2014), filed after the close of briefing, controls. There, we rejected identical claims about the reasonable doubt instruction made by Smith in this case. We held that WPIC 4.01 accurately states the law. Fedorov, 324 P.3d at 790.

Photographs

Smith next contends the trial court erred by admitting photographs of Mitchell's injuries and property damage taken by police on July 30, 2012. He argues that the

---

[9] We also note that the invited error doctrine bars Smith's appeal on this issue. The invited error doctrine prohibits a party from challenging a jury instruction it proposed. State v. Gentry, 125 Wn.2d 570, 645, 888 P.2d 1105 (1995). "The doctrine applies even when the error is of constitutional magnitude." State v. McLoyd, 87 Wn. App. 66, 69, 939 P.2d 1255 (1997). Smith proposed a jury instruction on the lesser included offense of misdemeanor violation of a no-contact order. The proposed instruction contained domestic violence as an element of the crime. The trial court gave this instruction, along with other instructions proposed by the State that contained domestic violence as an element of the crime. Although inclusion of domestic violence as an element of the charged crimes apparently originated in the State's proposed instructions, Smith contributed to the error by requesting an additional instruction that contained the language he now challenges on appeal.

evidence was inadmissible because the court failed both to determine whether Smith actually assaulted Mitchell and to balance the prejudicial impact against its probative value.[10] The State acknowledges the trial court failed to explain its ER 404(b) balancing analysis on the record but asserts that any error was harmless. We agree.

> Before admitting evidence of other crimes, wrongs, or acts under ER 404(b)
>
> the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.

State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). The trial court errs when it does not articulate its ER 404(b) balancing analysis on the record. State v. Bradford, 56 Wn. App. 464, 468, 783 P.2d 1133 (1989). However, "the error is harmless unless the failure to do the balancing, within reasonable probability, materially affected the outcome of the trial." State v. Sublett, 156 Wn. App. 160, 196, 231 P.3d 231 (2010). "Evidentiary errors under ER 404(b) are not of constitutional magnitude." State v. Jackson, 102 Wn.2d 689, 695, 689 P.2d 76 (1984). "[I]n those cases where, from the record as a whole, the reviewing court can decide issues of admissibility without the aid of an articulated balancing process on the record, the court should do so." State v. Gogolin, 45 Wn. App. 640, 645, 727 P.2d 683 (1986).

First, a preponderance of the record evidence establishes that Bellingham Municipal Court issued a pretrial domestic violence no-contact order on July 30, 2012, preventing Smith from contacting Mitchell, quoted in part above. At trial, Mitchell denied

---

[10] Smith specifically claims, "Mr. Smith was prejudiced by the admission of prior act evidence that was not established by a preponderance of the evidence, was irrelevant, and was highly prejudicial." Appellant's Br. at 14 (boldface omitted).

any prior assaults by Smith, including the July 30, 2012 incident. But she admitted reporting the July 30, 2012 assault to police and that responding police officers took photographs of her injuries and the property damage inflicted by Smith. The no-contact order identifies Smith's full name, date of birth, his signature, Mitchell's full name, and her date of birth. The order also recites, "Done in open court in the presence of the Defendant this 30th day of July, 2012." Ex. 2. The court admitted the domestic violence no-contact order at trial as exhibit 2, without objection.

On the question of the photograph's relevance, the court admitted it as probative of Mitchell's credibility. "To be relevant, evidence must tend 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable.'" State v. Foxhoven, 161 Wn.2d 168, 176, 163 P.3d 786 (2007) (quoting ER 401). Mitchell's denial about the two assaults, which she reported to police, raised material questions about her credibility. "[P]rior acts of domestic violence involving the defendant and the crime victim are admissible in order to assist the jury in judging the credibility of a recanting victim . . . ." State v. Magers, 164 Wn.2d 174, 187, 189 P.3d 126 (2008). The trial court also gave a comprehensive oral limiting instruction before the photographs' admission into evidence:

> Plaintiff's Exhibit No. 6 will be admitted. And let me advise the jury at this point that when you view Exhibit 6 and the testimony that you have heard about Exhibit 6 is before the jury for a limited purpose and that purpose is to help the jury make a decision it must make about the credibility of this witness. The purpose and the information is admitted only for that purpose and not for the purpose of the jury assessing an issue that's not before the jury, which is the issue of what may or may not have happened in July, or the reasons for the July 30th order of the municipal court the jury's heard discussed in this trial, the reasons why that order was issued, those questions are not before the jury and they're not at issue in this trial. So you are to consider the information and testimony about the events of July 30th only for the purpose of assessing the credibility of this witness.

RP at 80.

Before the State's direct examination of Mitchell about the July 30, 2012 no-contact order, the court gave an additional oral limiting instruction.

> I'm going to permit the testimony to establish a context. But I will clarify for the jury that the charge involves conduct that allegedly occurred in early October and that's the crime that's charged here. So any information heard here about background is simply background information and not evidence of a crime that hasn't been charged and shouldn't be taken that way.

RP at 31. The court's instruction 18 about Mitchell's July 30, 2012 statements to police limited that evidence's relevance to her credibility:

> Certain evidence has been admitted in this case for only a limited purpose. The evidence regarding Ms. Mitchell's statements to police on July 30, 2012 must be considered by you only for the purpose of assessing credibility. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP 36. "A jury is presumed to follow instructions given." State v. Brown, 132 Wn.2d 529, 618, 940 P.2d 546 (1997). Smith points to nothing in the record indicating the jury disregarded the instruction.

Even if we assume trial court error in admitting the photographs, the record summarized above establishes Smith violated the no-contact order and assaulted Mitchell on the night of October 3, 2012. There is no reasonable probability that the outcome of the trial would have been affected. Any error in admitting the photographs was harmless. State v. Carleton, 82 Wn. App. 680, 686-87, 919 P.2d 128 (1996) (failure to weigh prejudice on the record harmless when the result would have been the same even if the trial court had not admitted the evidence).[11]

---

[11] Smith also argues that cumulative error denied him a fair trial and requires reversal of his conviction. "Absent prejudicial error, there can be no cumulative error

Vacated Assault Conviction

Although Smith's fourth degree assault conviction was vacated on double jeopardy grounds, it remains in his judgment and sentence. The parties agree that any references to the vacated assault conviction should be removed pursuant to State v. Turner, 169 Wn.2d 448, 464, 238 P.3d 461 (2010) ("To assure that double jeopardy proscriptions are carefully observed, a judgment and sentence must not include any reference to the vacated conviction . . . ."). Accordingly, we remand to the trial court with instructions to remove all reference to the vacated assault conviction in the judgment and sentence.

## CONCLUSION

We affirm Smith's conviction for felony violation of a no-contact order but remand to the sentencing court to correct the judgment and sentence consistent with this opinion.

WE CONCUR:

Cox, J.

Spearman, J.

Becker, J.

---

that deprived the defendant of a fair trial." State v. Saunders, 120 Wn. App. 800, 826, 86 P.3d 232 (2004). Because no errors occurred, there is no cumulative error.