[No. 11291-1-I. Division One. June 22, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. PETER SAVO CIRKOVICH, *Appellant.*

*Hunter John, Michael Filipovic,* and *Rosemary Bordlemay* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney, Ginny Evans, Special Deputy,* and *Timothy X. Sullivan, Deputy,* for respondent.

DURHAM, A.C.J.—Peter Cirkovich appeals his conviction of second degree rape. He contends that the trial court's denial of his request for a transcript of a codefendant's trial, at the State's expense, violated his constitutional rights. Cirkovich also contends that the State failed to present sufficient evidence to prove complicity in the crime beyond a reasonable doubt.

On August 26, 1981, Cirkovich and four friends, Taylor, Olson, Bakken and Rancich, devised a plan to rape 15–year–old Heather H. at Mt. Pleasant Cemetery in Seattle, Washington. They contacted Heather and convinced her to go to the cemetery to "party." At the cemetery, Olson took Heather behind some bushes. Shortly thereafter, Heather saw Taylor coming through the bushes. Her mouth and eyes were then covered while some or all of the other boys pinned her down. At least one person had sexual intercourse with her by forcible compulsion. She testified that she heard Cirkovich's voice during the incident. The State charged Cirkovich and the other four boys with second degree rape pursuant to RCW 9A.44.050(1)(a).[1]

Olson was tried separately on January 4 through 5, during which time codefendant Taylor testified for the State.[2]

---

[1] RCW 9A.44.050 provides in part:

"(1) A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person, not married to the perpetrator:

"(a) By forcible compulsion; . . ."

[2] The proceedings were transferred from juvenile court to superior court due to the limited courtroom facilities at juvenile court.

On January 7, the State moved to consolidate the trials of Cirkovich and Rancich before the criminal motions judge. At the same hearing, Cirkovich moved, in forma pauperis, for production of the Olson trial transcript. Rancich did not object to consolidation, but would not waive his speedy trial right beyond January 12. Cirkovich objected to consolidation because Taylor's testimony could not be transcribed by January 12. The court granted the State's motion to consolidate and denied Cirkovich's request for the transcript. On January 11, 1982, in a bench trial, the court heard the consolidated trials of Cirkovich and Rancich, during which Taylor again testified on behalf of the State. Cirkovich renewed his motion for the Olson trial transcript. The court denied the motion, and found Cirkovich guilty.

Cirkovich first argues that the court's denial of his request for a transcript of Olson's trial, at the State's expense, violated his constitutional guaranty of equal protection and effective assistance of counsel. He claims that the principle enunciated in *Griffin v. Illinois*, 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585, 55 A.L.R.2d 1055 (1956), and its progeny,[3] require the State to provide him with his codefendant's trial transcript. We disagree.

■ Generally, the *Griffin* principle requires the State to provide indigents with the basic tools of an adequate defense when those tools are available to others for a price.[4] This principle inextricably entwines the constitu-

---

[3]*See Williams v. Oklahoma City*, 395 U.S. 458, 23 L. Ed. 2d 440, 89 S. Ct. 1818 (1969); *Gardner v. California*, 393 U.S. 367, 21 L. Ed. 2d 601, 89 S. Ct. 580 (1969); *Roberts v. LaVallee*, 389 U.S. 40, 19 L. Ed. 2d 41, 88 S. Ct. 194 (1967); *Long v. District Court*, 385 U.S. 192, 17 L. Ed. 2d 290, 87 S. Ct. 362 (1966); *Draper v. Washington*, 372 U.S. 487, 9 L. Ed. 2d 899, 83 S. Ct. 774 (1963); *Eskridge v. Washington State Bd. of Prison Terms & Paroles*, 357 U.S. 214, 2 L. Ed. 2d 1269, 78 S. Ct. 1061 (1958).

[4]We note that the court reporter could not prepare the transcript before the expiration date of the speedy trial term, which codefendant Rancich refused to waive, so the transcript was not available for any price. Thus, *Griffin v. Illinois*, 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585, 55 A.L.R.2d 1055 (1956) is inapplicable on the facts. However, we chose to decide this case on the legal issue presented because of its significance.

tional guaranties of due process, equal protection and effective assistance of counsel. *See also State v. Williams,* 84 Wn.2d 853, 529 P.2d 1088 (1975); *State v. Woodard,* 26 Wn. App. 735, 617 P.2d 1039 (1980). The Supreme Court has specifically stated, however, that indigent defendants are not entitled to transcripts in all cases. *Griffin,* at 20. Clearly, the parameters of the *Griffin* principle are not yet established. Washington courts have held that an indigent defendant is entitled to a transcript of a prior proceeding if he was a party thereto. *State v. Williams, supra; State v. Woodard, supra.*

Fundamental to the holding in these cases is the defendant's status as a party to the prior litigation. Nowhere do we find any suggestion that the right extends to nonparty codefendants, and we decline the invitation to broaden it here.

The expenditure of state funds is a serious decision which must be guided by a sense of fiscal responsibility. Cirkovich made no showing of need, nor that he would be prejudiced by the denial of his motion. Furthermore, there was no evidence that alternative means, such as taking notes during Olson's trial, were not an adequate substitute.

There are additional public policy reasons for limiting the right to a transcript to the same party. Where the indigent defendant was a party at the previous proceeding, it is likely that the counsel, issues, witnesses and trial strategy are the same. Furthermore, the second trial does not always occur immediately, and the transcript may be necessary to refresh the memories of counsel and witnesses alike. These considerations usually do not apply to codefendants. Moreover, if we were to extend the principle to codefendants' trial transcripts, might we not then have to require the State to provide free transcripts of even remotely related trials? The *Griffin* principle was never intended to reach so far.

Cirkovich next challenges the sufficiency of the State's case to prove his guilt beyond a reasonable doubt. Cirkovich concedes that a conviction may rest solely on the

uncorroborated testimony of an accomplice. *State v. John-son,* 77 Wn.2d 423, 462 P.2d 933 (1969). However, he argues that Taylor's testimony was unreliable because: (1) Taylor, the instigator of the crime, testified that he did not want to be the only one punished; (2) Taylor had been drinking heavily on the day in question and misperceived the events thereon; (3) Taylor testified that two people had sexual intercourse with Heather whereas she claimed only one; (4) Taylor equivocated on cross examination about Cirkovich's agreement to participate in the rape; and (5) Taylor testified that Cirkovich was directly behind him when they went through the bushes whereas Heather stated that she saw only Taylor. Cirkovich claims that these factors are analogous to the indicia of unreliability discussed in *State v. Pearson,* 37 Wash. 405, 79 P. 985 (1905), *State v. Concannon,* 25 Wash. 327, 65 P. 534 (1901), and *Edwards v. State,* 2 Wash. 291, 26 P. 258 (1891). Accordingly, Cirkovich argues, the trial court was bound to disbelieve Taylor's testimony. We disagree.

A critical examination of the cases cited by Cirkovich reveals substantial factual differences from the case at bar.[5] In each of those cases, the reasons for disbelieving the accomplice were apparent. Here they are debatable, at best.

 Uncorroborated accomplice testimony should be regarded with skepticism and carefully scrutinized. It is the

---

[5]*State v. Pearson,* 37 Wash. 405, 79 P. 985 (1905); *State v. Concannon,* 25 Wash. 327, 65 P. 534 (1901); *Edwards v. State,* 2 Wash. 291, 26 P. 258 (1891). In *Pearson,* the accomplice confessed to perjury. He admitted to statements made under oath in a former trial, contrary to the testimony he gave before the court in that case. In *Concannon,* the court reversed a conviction which had been sustained solely on uncorroborated accomplice testimony. The accomplice was not only a habitual opium user, but had to be administered the drug while on the stand. In *Edwards,* the accomplice's testimony was inherently improbable. The 18–year–old boy testified that his 70–year–old father and another man, Edwards, took him to a cattle track on the pretense of bringing in the herd when they intended, instead, to enlist his help to brutally murder a neighbor. The only one in the group with a gun to commit the foul deed was the young boy. The court pointed out the unlikeliness of a party of men, intending to shoot a neighbor through the head, going about the task without a gun, on the chance occurrence that the youngster would have brought one along.

exclusive province of the trier of fact to review such testimony and exercise its discretion, according to it the appropriate weight. *State v. Smith,* 31 Wn. App. 226, 228, 640 P.2d 25 (1982); *State v. Barry,* 25 Wn. App. 751, 761, 611 P.2d 1262 (1980). The trial judge, having heard and seen Taylor on the stand, was in the best position to evaluate his demeanor and weigh his testimony. Taylor's testimony showed that Cirkovich was involved in planning the crime, was present at the scene, and aided in executing the crime. We cannot say that no reasonable person would have believed Taylor. *See State v. Huelett,* 92 Wn.2d 967, 969–70, 603 P.2d 1258 (1979); *State v. York,* 28 Wn. App. 33, 36, 621 P.2d 784 (1980). The State met its burden. *See Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

The judgment is affirmed.

SWANSON and CORBETT, JJ., concur.

Reconsideration denied July 19, 1983.