[No. 7177–4–III.   Division Three.   June 19, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. SUSAN CUMMINGS, *Appellant.*

---

*Michael E. DeGrasse,* for appellant (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* and *Donald W. Schacht, Deputy,* for respondent.

MUNSON, J.—Susan Cummings appeals her conviction for aggravated first degree murder, contending: (1) she was denied effective assistance of counsel; and the court erred in (2) denying her motion to dismiss based on the State's alleged failure to preserve evidence; (3) admitting certain gruesome photographs; (4) allowing the State to inquire into her prior acts of misconduct; (5) denying her motion to dismiss because there was insufficient evidence to support a verdict of guilty; and (6) sentencing her to a term of life imprisonment without the possibility of parole. We affirm.

On June 24, 1983, Christine Zacharias was murdered in her home. In 1985 Ms. Cummings, Lillie Rowland, and Joe Aguilar were charged with her murder. Ms. Cummings and Ms. Rowland were appointed separate counsel, both from the office of William W. Messer & Associates, the contract public defender with Walla Walla County. Prior to trial and while being represented by Mr. Messer's office, Ms. Rowland gave several statements to the State, implicating Ms. Cummings in the murder of Ms. Zacharias. Ms. Rowland entered into a plea bargain which gave her immunity from the charge in exchange for her testimony against Ms. Cummings.

Mr. Messer was made aware of this conflict of interest between Ms. Rowland and Ms. Cummings by at least one of his associates yet declined to draw the court's attention to this fact. Approximately 1 month prior to the date set for trial, both the associate representing Ms. Cummings and the prosecutor informed the court of the defendants' conflicting interests. The Messer firm withdrew as counsel for

Ms. Cummings, but continued to represent Ms. Rowland. The court appointed Ms. Cummings independent counsel and an investigator. Thereafter, through her new counsel she moved to dismiss the information and amended information on the grounds her right to effective assistance of counsel had been denied; the court denied her motion and the trial proceeded as scheduled.

A jury found her guilty of aggravated first degree murder. She moved for arrest of judgment or alternatively for new trial based upon denial of effective assistance of counsel and other alleged errors. The court rejected her motion. A sentence of life imprisonment without the possibility of parole was imposed; this appeal followed.

 Ms. Cummings initially contends she was denied effective assistance of counsel because up to a month prior to trial she shared appointed counsel with Ms. Rowland, whose interest obviously conflicted with hers. The standard for determining whether a defendant has been denied effective assistance of counsel is after examination of the entire record, can it be said the defendant received effective representation and a fair and impartial trial. *State v. Smith,* 104 Wn.2d 497, 511, 707 P.2d 1306 (1985); *State v. Johnson,* 74 Wn.2d 567, 570, 445 P.2d 726 (1968). Here, review indicates Ms. Cummings was not denied effective assistance of counsel. Although both she and Ms. Rowland were represented by the firm of William W. Messer & Associates, they were, in fact, represented by different attorneys within that firm.

More importantly, a month before trial, the Messer firm withdrew from representing Ms. Cummings; new counsel, independent of the firm, was appointed and proceeded to trial. There is no allegation that trial counsel was ineffective. The record fails to reveal any indication Ms. Cummings was prejudiced by being initially represented by William W. Messer & Associates. Consequently, the initial appointment of that office to represent both Ms. Cummings and Ms. Rowland did not deny Ms. Cummings effective assistance of counsel. *Johnson,* at 571; *see State v. Lingo,*

32 Wn. App. 638, 646, 649 P.2d 130, *review denied,* 98
Wn.2d 1005 (1982).

Ms. Cummings' reliance on, *inter alia, Cuyler v. Sulli-
van,* 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980)
and *Holloway v. Arkansas,* 435 U.S. 475, 55 L. Ed. 2d 426,
98 S. Ct. 1173 (1978) is misplaced. In those cases, the rep-
resentation of multiple defendants with conflicting interests
by a single attorney continued through the trial. Thus, the
defendants in those cases were deemed actually prejudiced
and the appropriate remedy was reversal. Here, the conflict
was recognized well in advance of trial, with the court
ordering the appropriate remedy by appointing indepen-
dent, new counsel. Ms. Cummings points to nothing but the
original conflict as error. There was no request for a con-
tinuance. We find no error.

█ Ms. Cummings next argues the court erred in deny-
ing her motion to dismiss based on the State's alleged fail-
ure to preserve the charts of her 1983 polygraph results.
*State v. Vaster,* 99 Wn.2d 44, 659 P.2d 528 (1983). The
decisions relating to the duty to preserve implicitly recog-
nize that the duty does not arise unless the State has con-
trol over the subsequently lost or destroyed evidence. *See
State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976) and its
progeny.

Here, it is unclear who requested the polygraph exami-
nation and who paid for it. The polygraph exam was given
in 1983, 2 years before Ms. Cummings was charged. The
State denied initiating the examination; neither the prose-
cutor nor the police were involved with that examination
other than being advised she had "passed." Given that nei-
ther the police nor the prosecutor instigated the examina-
tion nor had custody of the charts, no duty arose to
preserve the results.

Furthermore, the polygraph charts could not have
affected the outcome of the trial as they would not be
admissible at trial absent a stipulation between the parties.
There is no stipulation. *State v. Rupe,* 101 Wn.2d 664, 690,
683 P.2d 571 (1984). In any event, the expert who adminis-

tered the test apparently was available to Ms. Cummings; he could have provided any necessary aid in her preparation of the case. The court did not err in denying the motion to dismiss based on failure to preserve material evidence.

■ Ms. Cummings next challenges the court's admission of several photographs of the victim and her injuries; she maintains, because the pictures were gruesome, their prejudicial impact outweighed any probative value. A trial court's admission of photographs will not be disturbed on appeal, absent a showing the court abused its discretion. *State v. Sargent,* 40 Wn. App. 340, 347, 698 P.2d 598 (1985) (citing *State v. Crenshaw,* 98 Wn.2d 789, 806, 659 P.2d 488 (1983)). Repulsive or gruesome photographs are admissible if they have probative value with respect to an element of the crime charged and if such probative value outweighs any prejudicial effect. *See Crenshaw,* at 806.

Here, the photographs were introduced to demonstrate: (1) more than one person likely participated in the murder; (2) the aggravating factors of rape or attempted rape, possibly with a crowbar; and (3) how the victim was attacked. The record clearly shows the court carefully considered the admission of the photographs on several occasions, eventually admitting only a few. The court did not abuse its discretion. *Cf. State v. Hatley,* 41 Wn. App. 789, 798, 706 P.2d 1083 (admission of photographs showing victim's brains next to her not an abuse of discretion), *review denied,* 104 Wn.2d 1024 (1985).

■ Ms. Cummings next contends the court erred in allowing the State to inquire, for impeachment purposes, into her prior theft of money from the victim; she claims the prior acts were not relevant to her truthfulness or veracity. The record reveals the following interchange:

THE COURT: Members of the jury, at this time the State is about to ask the defendant a question or two concerning prior acts of hers. These questions are being permitted for the purpose of impeaching the defendant only and the answers are not to be considered in deter-

mining whether or not she is guilty of the crime of which she is charged in this case.

Q. (By Mr. Schacht) Miss Cummings, isn't it true that on at least one prior occasion that you had taken money from the deceased that did not belong to you?

A. Yes.

Thereafter, the State did not inquire further or seek to introduce further evidence proving the theft.

ER 608 provides in pertinent part:

> **(b) Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning his character for truthfulness or untruthfulness . . .

The court erred in allowing the inquiry for purposes of impeachment since an act of theft is not directly relevant to the defendant's propensity for truthfulness and veracity as a witness. *See State v. Sellers,* 39 Wn. App. 799, 804, 695 P.2d 1014, *review denied,* 103 Wn.2d 1036 (1985); *State v. Harper,* 35 Wn. App. 855, 861, 670 P.2d 296 (1983), *review denied,* 100 Wn.2d 1035 (1984). *Cf. State v. Burton,* 101 Wn.2d 1, 7, 676 P.2d 975 (1984) (prior convictions for *theft* not admitted under ER 609(a)(2) for impeachment purposes as they do not have relevance to "the defendant's ability to tell the truth"). Nevertheless, the State's theory was Ms. Cummings and the others went to the victim's house to steal a large amount of money rumored to be hidden there. Ms. Cummings' prior discovery and theft of money from the victim was, therefore, relevant to her motive for being in the house on the day it was ransacked and the victim murdered. ER 404(b). We find no error.

■ Ms. Cummings also asserts there was insufficient evidence to support her conviction since most of the testimony against her was presented by Ms. Rowland and Mr. Aguilar, two alleged accomplices; she maintains such evi-

dence is inherently untrustworthy. In addition, she claims much of the testimony here was inconsistent on several important matters. The standard for determining the sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Guloy*, 104 Wn.2d 412, 417, 705 P.2d 1182 (1985). Although the evidence against Ms. Cummings was in part circumstantial, such evidence is competent and admissible since it tended "logically, naturally, and by reasonable inference to prove or disprove" that she participated in the victim's murder. *State v. Young*, 87 Wn.2d 129, 134, 550 P.2d 1 (1976). A conviction may rest solely upon the uncorroborated testimony of an accomplice. *State v. Johnson*, 77 Wn.2d 423, 440, 462 P.2d 933 (1969). In such situations, a cautionary instruction must be given, *State v. Harris*, 102 Wn.2d 148, 153, 685 P.2d 584 (1984); such an instruction was given here.

Moreover, the accomplices' testimony was in part corroborated; a friend of Ms. Cummings testified that prior to the murder she told him she planned to steal the victim's money with some friends. A reasonable person could have believed the accomplices. *State v. Cirkovich*, 35 Wn. App. 134, 139, 665 P.2d 440 (1983).

Finally, Ms. Cummings claims that sentencing her pursuant to the aggravated first degree murder statute, RCW 10.95.030(1), providing for mandatory life imprisonment without the possibility of parole, violates equal protection and public policy. She maintains, unlike those persons sentenced under other sentencing provisions, she is denied the right to have mitigating factors (*e.g.*, her youth, she being 16 at the time of the murder and 18 at the time of trial) considered by the sentencing court; thus, RCW 10.95 impermissibly deprives sentencing decisions of flexibility and discretion. *See State v. Ortiz*, 104 Wn.2d 479, 485–86, 706 P.2d 1069 (1985) (where our Supreme Court opined that if the Legislature provided some latitude in this statute, "justice would be better served").

*State v. Frampton,* 95 Wn.2d 469, 627 P.2d 922 (1981) generally upheld the constitutional validity of a life sentence without parole. Moreover, in *State v. Dictado,* 102 Wn.2d 277, 296–97, 687 P.2d 172 (1984), the court addressed virtually the same contention presented here; there, the defendant contended the sentence violated due process because the jury had no discretion to reduce the mandatory life sentence. The court rejected his contention noting the Legislature may properly require a mandatory sentence and that parole is a matter of "'executive grace.'" *Dictado,* at 296–97 (citing *State v. Fain,* 94 Wn.2d 387, 394, 617 P.2d 720 (1980)). Since Ms. Cummings has no right to have her sentence mitigated by parole, she, likewise, has no right to have discretionary factors considered with respect to the granting of parole. Thus, we must find Ms. Cummings' arguments to be of no avail. *See also State v. Grisby,* 97 Wn.2d 493, 497–98, 647 P.2d 6 (1982), *cert. denied,* 459 U.S. 1211 (1983).

The conviction and sentence is affirmed.

GREEN, C.J., and THOMPSON, J., concur.

Review denied by Supreme Court September 2, 1986.