# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
) DIVISION ONE
Respondent, )
) No. 68327-6-I
v. )
) UNPUBLISHED OPINION
RONALD JOHN HUBBARD JR., )
)
Appellant. ) FILED: October 14, 2013
_____ )

DWYER, J. — Ronald Hubbard appeals from the judgment entered on a jury's verdict finding him guilty of one count of child molestation in the third degree. Hubbard contends that his conviction should be reversed and the case remanded for a new trial both because the trial court erred by denying his motion to excuse a certain juror for cause and because the trial court erred by excluding impeachment evidence of the complaining witness's prior bad acts. Finding that the trial court did not abuse its discretion by denying Hubbard's challenge for cause or by ruling that evidence of the complaining witness's prior bad acts was inadmissible, we affirm.

I

In 2005 or 2006, Hubbard began dating Siobahn Cuddihy. After dating for

a period of time,[1] Hubbard moved into an apartment in Kent with Cuddihy and her two children, B.M.O. and Sean Moss. While living with Cuddihy, Hubbard acted as the household disciplinarian, grounding B.M.O. on multiple occasions. Among other things, B.M.O. was grounded for shoplifting, forging Hubbard's signature on a school form, cheating on school work, doing other students' work for pay, and getting suspended from school.

In the summer of 2009, Hubbard, Cuddihy, B.M.O., and Moss moved to Yamhill County, Oregon. During an argument between Hubbard and Cuddihy's brother in December 2009, B.M.O. accused Hubbard of molesting her while they were living in Kent. After hearing B.M.O.'s accusation, Cuddihy's brother called the police. Subsequently, B.M.O. told the police about three separate incidents during which, she claimed, Hubbard had molested her.

B.M.O. alleged that the first incident took place at the family's apartment in Kent. On that occasion, B.M.O. claimed, Hubbard touched her vagina with a back massager. B.M.O. alleged that the second incident took place shortly thereafter, and also involved Hubbard touching her vagina with a back massager at the apartment in Kent. This incident was witnessed by Moss. B.M.O. alleged that the third incident occurred months later in Federal Way, when Hubbard pushed her vagina into a hot tub stream. B.M.O. further alleged that during this incident she could feel Hubbard getting an erection.

The Yamhill County Sheriff's Office referred the matter to the Kent Police

---

[1] The testimony of the witnesses varied as to how long Hubbard and Cuddihy dated before they moved in together. Nevertheless, the exact length of time is immaterial to the issues on appeal.

Department. Eventually, the King County Prosecuting Attorney's Office charged Hubbard with three counts of child molestation in the third degree: count I for the first back massager incident, count II for the second back massager incident, and count III for the hot tub incident.

Jury selection for Hubbard's trial began on October 31, 2011. Prospective jurors filled out a brief questionnaire designed to detect potential biases. The questionnaire included 10 questions, only one of which is pertinent here:

> 9. Is there any reason that you would be unable to be fair and impartial to both sides in a case that involves an accusation of sexual abuse, sexual assault or sexual misconduct?

Juror 18 answered "no" to all questions on the questionnaire, including question 9. However, when the trial court asked the pool of potential jurors whether any juror had any hardship that would prevent that juror from serving, juror 18 indicated that she worked three jobs. The trial court declined to excuse juror 18 for hardship, finding that she did not indicate that she would suffer financial harm.

During the first round of general voir dire, juror 18 expressed concern about "bias" because she was "a mother with daughters," stating that she was "not sure I could be fair and that concerns me." However, when the prosecutor discussed child molestation with the potential jurors, juror 18 freely participated in the discussion. After the first round of voir dire, Hubbard challenged juror 18 for cause. The trial court denied the challenge without prejudice.

During the second round of general voir dire, juror 18 again expressed that she was concerned, without going into further detail. The trial court noted for the record that it would keep in mind juror 18's request for excusal for hardship in

assessing her overall credibility. The trial court additionally noted some discomfort on the part of juror 18, and stated its belief that juror 18 did not want to participate in the trial. However, the trial court was not convinced that this merited a for-cause dismissal, stating, "I guess the Court's inquiry is what specific indications, what bias do we have of these assertions." The trial court also observed that juror 18 had not "expressed any hesitation to promise that . . . she would follow the Court's instructions." In denying Hubbard's renewed challenge for cause after the second round of general voir dire, the trial court stated that it "never found it very convincing that she can't be fair and impartial" and that it did not "think it rises to the level of the Court finding that it's probable that she's not going to be able to follow the Court's instructions and consider the evidence fairly and impartially."

During the third round of general voir dire, juror 18 stated that she "always abide[s] by the law" and that she "just want[s] to be fair to Mr. Hubbard." Juror 18 ended her voir dire questioning by stating, "I don't think you want me." Hubbard again renewed his challenge for cause, which the trial court again denied.[2] Juror 18 was not the subject of a peremptory challenge and was empanelled as a member of the jury.

At trial, Hubbard sought to introduce evidence of B.M.O.'s prior bad acts to prove both an untruthful disposition and a motive to falsely accuse Hubbard of sexual misconduct. Hubbard sought to introduce into evidence the following prior

---

[2] Eleven jurors were excused for cause before the jury was empanelled. One additional juror was dismissed for cause after the jury was empanelled. The court proceeded with no alternate jurors.

bad acts by B.M.O., all of which resulted in Hubbard disciplining her: four shoplifting incidents, B.M.O.'s forging of Hubbard's signature on a school document, her cheating on school work, her selling tests and doing other students' homework for pay, and her being suspended from school.[3] B.M.O. was not convicted of any criminal offenses as a result of any of these incidents. Citing State v. Cummings, 44 Wn. App. 146, 721 P.2d 545 (1986), the trial court ruled that the evidence was inadmissible under ER 608, as none of the incidents demonstrated a general disposition for untruthfulness. The trial court also cited State v. Harper, 35 Wn. App. 855, 670 P.2d 296 (1983), for the proposition that evidence of B.M.O.'s act of forgery, for which she was never criminally charged or convicted, could not serve to impeach her veracity as a witness.[4]

Additionally, the trial court ruled that the evidence was not admissible under ER 404(b) and ER 403, because its probative value was substantially outweighed by the danger of unfair prejudice. This was so, the trial court stated, because introduction of B.M.O.'s prior bad acts "will be extremely time-consuming and amount to mini trials," and that Hubbard's defense theory "is supported by the evidence that's already there." The trial court further noted that, "[t]here has been an insufficient showing by the Defense that any of these incidents can be shown to have triggered any of the disclosures," and that there

---

[3] Hubbard sought to question both B.M.O. and Cuddihy about these incidents. With respect to Cuddihy, the trial court limited Hubbard to general questions about whether the groundings were the result of "problems at school" or "associating with the wrong crowd." The trial court indicated that it was "not yet persuaded to start looking at the specifics of shoplifting."

[4] "Evidence of previous forgeries attacks the witness' reputation for honesty; it does not attack her veracity." Harper, 35 Wn. App. at 861.

was "no obvious nexus between any of these incidents and some sort of motive to make up these allegations." The trial court did, however, permit defense counsel to question B.M.O. about being grounded by Hubbard and about her anger at Hubbard for stealing some of her belongings from a storage locker.

The jury acquitted Hubbard on counts I and III, and convicted him on count II. The trial court entered judgment on January 27, 2012, sentencing Hubbard to 10 months in custody.

Hubbard appeals.

II

Hubbard contends that he is entitled to a new trial because the trial court erred in denying his motion to exclude a juror for cause. This is so, he asserts, because juror 18 demonstrated actual bias during voir dire. We disagree.

We review a trial court's denial of a juror challenge for cause under a manifest abuse of discretion standard. State v. Noltie, 116 Wn.2d 831, 838, 809 P.2d 190 (1991). A challenge for cause should be granted only when a juror exhibits a probability of actual bias such that the juror holds opinions or beliefs that he or she cannot put aside for the purpose of impartially deciding the merits of the case. Noltie, 116 Wn.2d at 839-40. Actual bias is defined as "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). The burden of showing actual bias rests on the

party challenging the juror for cause. State v. Wilson, 141 Wn. App. 597, 606, 171 P.3d 501 (2007).

A juror should not be disqualified merely because the juror harbors opinions that may affect the determination of the issues. "The question is whether a juror with preconceived ideas can set them aside." State v. Rupe, 108 Wn.2d 734, 749, 743 P.2d 210 (1987).

> The trial judge is best situated to determine a juror's competency to serve impartially. Patton v. Yount, 467 U.S. 1025, 1039, 81 L. Ed. 2d 847, 104 S. Ct. 2885 (1984); State v. Gosser, 33 Wn. App. 428, 434, 656 P.2d 514 (1982). The trial judge is able to observe the juror's demeanor and, in light of that observation, to interpret and evaluate the juror's answers to determine whether the juror would be fair and impartial. Patton v. Yount, supra at 1038; Briley v. Bass, 750 F.2d 1238, 1246 (4th Cir.1984), cert. denied, 470 U.S. 1088, 85 L. Ed. 2d 152, 105 S. Ct. 1855 (1985); State v. Gosser, supra at 434.

Rupe, 108 Wn.2d at 749.

Here, juror 18's answers indicated that she believed that she had a "bias" in a molestation case because she was "a mother with daughters." However, juror 18 had indicated on her questionnaire that she had no reason to be unable to be fair and impartial. Upon further questioning during voir dire, she asserted that she "always abide[s] by the law" and "just want[s] to be fair." Furthermore, juror 18 had previously and unsuccessfully requested to be excused for hardship. In declining to excuse juror 18 for cause, the trial court took the opportunity to evaluate juror 18's responses, examine her demeanor, and assess her credibility. The trial court was not convinced that juror 18 could not be fair and impartial.

Thus, Hubbard failed to meet his burden to establish actual bias on the part of juror 18.

Nevertheless, Hubbard contends, the trial court manifestly abused its discretion in denying Hubbard's challenge for cause. This is so, he asserts, because the trial court denied the motion on the basis of its concern about the small jury pool. This contention lacks merit. The trial court expressed concern over the small jury pool, in that if the pool fell below 27 potential jurors, no alternate would be available. However, the trial court stated, after expressing its concern:

> I'll do my duty, but that will mean we'll have to bring some additional jurors up here. And the Court is prepared to do that; however, based on the present record, the Court is comfortable with the rulings that it has made. . . . The Court will endeavor to continue to do its duty if it's persuaded we need to call more jurors in.

Moreover, the trial court's concern about the anticipated need to call more prospective jurors did not prevent it from excusing a juror for cause on the morning of trial.[5] From the record, it is evident that the trial court did not rule on Hubbard's motion to excuse juror 18 for cause based on concerns about the size of the jury pool. There was no abuse of discretion.

### III

Hubbard next contends that his conviction should be overturned because the trial court erred by excluding evidence of B.M.O's prior bad acts. This is so,

---

[5] Juror 12's language barrier was not revealed until after the jury was empanelled.

he asserts, because the evidence was admissible under two separate rules of evidence: ER 608(b) and ER 404(b).[6] We disagree.

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. State v. Darden, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002). Discretion is abused "only if no reasonable person would have decided the matter as the trial court did." State v. O'Connor, 155 Wn.2d 335, 351, 119 P.3d 806 (2005); see also Darden, 145 Wn.2d at 619 ("Abuse exists when the trial court's exercise of discretion is 'manifestly unreasonable or based upon untenable grounds or reasons.'" (quoting State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995))).

Hubbard first contends that evidence of B.M.O.'s prior bad acts was admissible under ER 608(b).[7] Pursuant to ER 608(b), evidence of prior bad acts of a witness may "in the discretion of the court, if probative of truthfulness or

---

[6] Hubbard also contends that his Sixth Amendment rights were violated. However, "[a] defendant in a criminal case has a constitutional right to present a defense 'consisting of relevant evidence that is *not otherwise inadmissible.*'" State v. Mee Hui Kim, 134 Wn. App. 27, 41, 139 P.3d 354 (2006) (emphasis added) (quoting State v. Rehak, 67 Wn. App. 157, 162, 834 P.2d 651 (1992)). As the evidence in this case was inadmissible, Hubbard's constitutional rights are not implicated.

[7] ER 608 provides:
(a) **Reputation Evidence of Character.** The credibility of a witness may be attacked or supported by evidence in the form of reputation, but subject to the limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise.
(b) **Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness." "Failing to allow cross-examination of a state's witness under ER 608(b) is an abuse of discretion if the witness is crucial and the alleged misconduct constitutes the only available impeachment." State v. Clark, 143 Wn.2d 731, 766, 24 P.3d 1006 (2001) (citing State v. York, 28 Wn. App. 33, 621 P.2d 784 (1980)). The parties do not dispute that B.M.O. was a crucial witness. Rather, the State maintains that evidence of B.M.O.'s prior acts was not the only available means of impeachment. We agree.

Hubbard contends that the evidence he sought to admit was relevant and "powerful." However, these factors alone do not amount to an abuse of discretion, pursuant to the standard articulated in Clark, 143 Wn.2d at 766. Hubbard had ample means to impeach B.M.O. and used them effectively during the course of the trial. During Hubbard's cross-examination of B.M.O., defense counsel questioned B.M.O. about numerous prior inconsistent statements that she made during the course of the investigation of her allegations. Defense counsel questioned both B.M.O. and Cuddihy about the extent of Hubbard's disciplining of B.M.O., and whether such discipline was justified or not. Moreover, defense counsel also elicited testimony from B.M.O. regarding her anger at Hubbard after he stole some of her belongings from a storage locker. As the trial court noted in its ruling, exclusion of the specific instances of B.M.O.'s

prior behavior was not "fatal to the Defense theory of the case."[8] The trial court did not abuse its discretion by excluding evidence of B.M.O.'s prior bad acts under ER 608(b)(1).

To the extent Hubbard sought to introduce B.M.O.'s prior bad acts through the testimony of other witnesses, ER 608(b)(2) prohibits inquiry into specific instances of conduct, unless the instances concern "the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." In other words, prior bad acts probative of untruthfulness of a witness may not be inquired into until after another witness has testified as to the truthful reputation of the witness. No witness in this case testified that B.M.O. had a reputation for truthfulness. Thus, the trial court did not abuse its discretion by excluding evidence of B.M.O.'s prior bad acts under ER 608(b)(2).[9]

---

[8] Although not dispositive, Hubbard's two acquittals provide further substantiation of the fact that Hubbard had ample means to impeach B.M.O.'s testimony. As the State notes, the only count on which Hubbard was convicted was count II, which involved the incident witnessed and testified to by Moss. The jury concluded that B.M.O.'s unsupported testimony was not sufficient to convict Hubbard on counts I and III. This indicates that the trial court was correct in concluding that avenues other than the challenged "bad act" evidence were available to the defense for impeachment purposes.

[9] Hubbard also briefly contends that the trial court erred in excluding evidence of B.M.O.'s prior bad acts under ER 608(a). Prior to trial, defense counsel made an offer of proof to the trial court naming two witnesses that he anticipated would testify to B.M.O.'s reputation for untruthfulness. Although no ruling was made at that time, the trial court indicated that defense counsel would need to lay a foundation showing that the witnesses could testify as to B.M.O.'s reputation for truthfulness in a relevant community. Defense counsel renewed his offer of proof during the trial. The trial court questioned whether the witnesses, as friends of Hubbard, would qualify as belonging to a neutral and generalized community, and requested that defense counsel be prepared to discuss the issue at a later time. See State v. Lord, 117 Wn.2d 829, 873-75, 822 P.2d 177 (1991). After this exchange, defense counsel abandoned this approach and did not call either witness to testify as to B.M.O.'s reputation for untruthfulness. The trial court cannot have erred when the decision not to pursue such evidence belonged to counsel.

Alternatively, Hubbard contends that evidence of B.M.O.'s prior bad acts was admissible under ER 404(b), which provides that:

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Hubbard sought to introduce B.M.O.'s prior bad acts to prove B.M.O.'s bias against Hubbard and her motive to falsely accuse Hubbard of sexual misconduct. The trial court noted that, without the challenged evidence, Hubbard could still advance his theory regarding B.M.O.'s bias and motive.

Ultimately, the trial court determined that the challenged evidence was inadmissible under ER 403, as its probative value was substantially outweighed by its prejudicial effect. ER 403 reads, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." A trial court properly excludes evidence that is "remote, vague, speculative, or argumentative because otherwise 'all manner of argumentative and speculative evidence will be adduced,' greatly confusing the issue and delaying the trial." State v. Kilgore, 107 Wn. App. 160, 185, 26 P.3d 308 (2001) (quoting State v. Jones, 67 Wn.2d 506, 512, 408 P.2d 247 (1965)), aff'd on other grounds, 147 Wn.2d 288, 53 P.3d 974 (2002); see also State v. Mee Hui Kim, 134 Wn. App. 27, 41, 139 P.3d 354 (2006); State v. Donahue, 105 Wn. App. 67, 79, 18 P.3d 608 (2001).

Hubbard contends that evidence of B.M.O.'s prior bad acts was relevant to prove motive and therefore should have been admitted. However, relevant evidence is only admissible if it is not subject to any exclusions. ER 402. Here, the trial court found that B.M.O.'s bad acts were excludable under ER 403, as the danger of unfair prejudice substantially outweighed any probative value the evidence might have had to show motive. The trial court also stated that evidence of B.M.O.'s prior acts "would tend to distract the jury, mislead the jury, [and] confuse issues," thus also making the evidence excludable for considerations of undue delay and waste of time. Hubbard was still able to cross-examine B.M.O. about her motive to accuse him, as he was permitted to question her about her being grounded frequently and about her anger toward him stemming from his theft of her belongings. As the trial court stated, testimony about the specifics of B.M.O.'s prior bad acts would have "amount[ed] to mini trials" of B.M.O., putting the complaining witness on trial and greatly confusing the issues. Accordingly, the trial court did not abuse its discretion in excluding evidence of B.M.O.'s prior bad acts.

Affirmed.

We concur:

-13-