**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
FEBRUARY 11, 2021

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
FEBRUARY 11, 2021

_Susan L. Carlson_
SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 97689-9 |
| CARL BROOKS | ) | |
| | ) | En Banc |
| Petitioner. | ) | |
| | ) | Filed: February 11, 2021 |
| _____ | ) | |

GONZÁLEZ, C.J.— Our state and federal constitutions recognize that "children are different." *Miller v. Alabama*, 567 U.S. 460, 480, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); *State v. Bassett*, 192 Wn.2d 67, 81-82, 428 P.3d 343 (2018); *State v. Houston-Sconiers*, 188 Wn.2d 1, 18, 391 P.3d 409 (2017); WASH. CONST. art. I, § 14; U.S. CONST. amend. VIII. It is constitutionally significant that children are less culpable than adults and have a greater capacity for change. *Miller*, 567 U.S. at 472-73 (citing *Graham v. Florida*, 560 U.S. 48, 72-74, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)). As a result, children "warrant special protections in sentencing." *Bassett*, 192 Wn.2d at 81. Both this court and the United States Supreme Court have recognized that under a constitutional sentencing system, those who commit crimes as juveniles should rarely be

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

sentenced to die in prison and must be given a meaningful opportunity to obtain release. *See Montgomery v. Louisiana*, __ U.S. __, 136 S. Ct. 718, 734, 193 L. Ed. 2d 599 (2016); *Miller*, 567 U.S. at 479; *Graham*, 560 U.S. at 74-75; *Bassett*, 192 Wn.2d at 90.

In the wake of *Miller* and to codify these constitutional protections, our legislature revised current sentencing law so that those serving lengthy sentences for crimes they committed as juveniles have a way to petition for release. LAWS OF 2014, ch. 130, § 9(3)(b); RCW 9.94A.730. We are asked whether RCW 9.94A.730 applies to the petitioner, Carl Brooks, who was sentenced as a juvenile under an earlier sentencing system. We hold that it does.

BACKGROUND

In 1978, 17-year-old Brooks pleaded guilty to eight counts of first degree robbery, first degree rape, first degree kidnapping, first degree assault, second degree murder, and first degree burglary, all while armed with a deadly weapon. Over the span of three days, Brooks carjacked, robbed, and raped a woman while her son was present; attempted to rob a couple where gunfire between Brooks and the male victim led to the shooting death of the victim's wife; carjacked and robbed a third woman; and threatened a fourth woman in her home, demanded financial information, and assaulted her. Brooks had prior convictions in both juvenile and adult court. These facts are not in dispute.

*In re Pers. Restraint of Brooks*, No. 97689-9

At the time, sentencing in our state was "indeterminate." *See* ch. 9.95 RCW. Under that indeterminate sentencing system, trial courts sentenced offenders to the maximum amount of time that could be served. But the amount of time the offender would actually serve was largely controlled by the Board of Prison Terms and Paroles (parole board) who would set the minimum term, taking into account recommendations by the trial court and prosecutor. RCW 9.95.010, .030, .040. The parole board also had the power to decide when an offender was fit to be released. In this case, the trial court sentenced Brooks to a maximum term of life on each count. The judge ordered five of the life sentences to run concurrently, and the remaining three to run consecutively, effectively sentencing Brooks to four consecutive "blocks" (or groupings) of life sentences.[1] Both the prosecutor and the court recommended that the parole board give Brooks minimum terms of life. Departing from the recommendations slightly, the parole board set minimum terms of 20, 25, 25, and 20 years for the four blocks, for a minimum total of 90 years.

Not long after Brooks' sentencing, the legislature largely replaced our indeterminate sentencing system with a determinate sentencing system, the Sentencing Reform Act of 1981 (SRA). *See* LAWS OF 1981, ch. 137; ch. 9.94A

---

[1] The first block consists of first degree robbery, counts I, VI, VII; first degree assault, count V; and first degree burglary, count VIII (20 years). The second block consists of first degree kidnapping, count III (25 years). The third block consists of first degree rape, count II (25 years). The fourth block consists of second degree murder, count IV (20 years). All of these include being armed with a deadly weapon. The first block contains multiple counts because those counts run concurrently with each other.

3

*In re Pers. Restraint of Brooks*, No. 97689-9

RCW; RCW 9.94A.905 (applying to crimes committed after June 30, 1984). The

SRA eliminated parole hearings for most offenders. For those sentenced under the

former indeterminate sentencing system who are still incarcerated, the

Indeterminate Sentence Review Board (ISRB) (the successor to the parole board)

was directed to "attempt to make [parole] decisions reasonably consistent" with the

SRA. RCW 9.95.009(2).

Brooks has had a number of parole hearings and has been paroled from his

first sentencing block. Parole in this case did not mean release, and he is currently

serving the second sentencing block. In 2018, the ISRB denied him parole and

added 60 months to his current sentencing block. Brooks has now been in prison

for over 42 years. He has approximately 50 years remaining on his sentence until

he will be eligible for release.

While Brooks has been serving his time, the United States Supreme Court

held that mandatory life-without-parole sentences for juveniles violate the Eighth

Amendment's prohibition on cruel and unusual punishment. *Miller*, 567 U.S. at

465. In response, our legislature enacted a series of changes to juvenile sentencing

known collectively as the *Miller*-fix statute. LAWS OF 2014, ch. 130. This

included a provision authorizing a juvenile convicted of one or more crimes to

petition the ISRB for early release after serving at least 20 years of confinement.

RCW 9.94A.730(1). If the ISRB grants release, the defendant is subject to

*In re Pers. Restraint of Brooks*, No. 97689-9

Department of Corrections (DOC) community custody for a period of time

determined by the ISRB, up to the length of the court-imposed term of

incarceration. RCW 9.94A.730(5).

The ISRB determined that Brooks is "not eligible for the 'Miller' fix."

Answer to Mot. for Discr. Review, App. 3 (ISRB Decisions and Reasons) at 7.

Acting pro se, Brooks filed a personal restraint petition (PRP) arguing that he is

unlawfully restrained and must be given a hearing under RCW 9.94A.730 of the

*Miller*-fix statute. The Court of Appeals denied Brooks' PRP, concluding that

because Brooks committed his crimes before the SRA was enacted, the "provisions

of the SRA, including RCW 9.94A.730, do not apply." Order Dismissing PRP, *In

re Pers. Restraint of Brooks*, No. 79757-3-I, at 2 (Wash. Ct. App. Aug. 20, 2019).

We granted Brooks' motion for discretionary review and appointed counsel.

Amici curiae American Civil Liberties Union of Washington, Columbia Legal

Services, Juvenile Law Center, King County Department of Public Defense, Fred

T. Korematsu Center for Law and Equality, National Juvenile Defender Center,

Washington Association of Criminal Defense Lawyers, and Washington Defender

Association collectively submitted a brief in support of Brooks.

ANALYSIS

Brooks bears the burden of showing he is under unlawful restraint. *In re

Pers. Restraint of Dyer*, 175 Wn.2d 186, 195-96, 283 P.3d 1103 (2012) (citing

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

RAP 16.4). Here, that requires him to show he is entitled to a *Miller* hearing under

RCW 9.94A.730. RAP 16.4(c)(6). Questions of statutory interpretation are

reviewed de novo. *State v. Scott*, 190 Wn.2d 586, 591, 416 P.3d 1182 (2018)

(citing *State v. Bunker*, 169 Wn.2d 571, 577, 238 P.3d 487 (2010)).

When interpreting a statute, we first consider the statute's plain language. *In re Adoption of T.A.W.*, 186 Wn.2d 828, 840, 383 P.3d 492 (2016) (citing *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007)). If a statute's language is plain and subject to only one interpretation, that ends the inquiry because plain language does not require construction. *Id.* (quoting *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009)). To determine a statute's plain meaning, we may look to the entirety of the statute in which the provision is found, related statutes, or other provisions within the same act. *Id.* (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002)). We also frequently consider the court cases that led the legislature to enact the statute. *E.g.*, *In re Pers. Restraint of Meirhofer*, 182 Wn.2d 632, 638, 343 P.3d 731 (2015); *Lummi Indian Nation v. State*, 170 Wn.2d 247, 251, 241 P.3d 1220 (2010).

The language of RCW 9.94A.730 is plain and unambiguous. The statute provides:

> Notwithstanding any other provision of this chapter, *any person* convicted of one or more crimes committed prior to the person's eighteenth birthday may petition the indeterminate sentence review board for early release after serving no less than twenty years of total confinement, provided the person

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Brooks*, No. 97689-9

has not been convicted for any crime committed subsequent to the person's eighteenth birthday, the person has not committed a disqualifying serious infraction as defined by the department in the twelve months prior to filing the petition for early release, and the current sentence was not imposed under RCW 10.95.030 or 9.94A.507.

RCW 9.94A.730(1) (emphasis added). The statute plainly applies to "any person" who meets the conditions set forth. The statute also clearly says who is excluded: individuals convicted of subsequent crimes after the age of 18, individuals who have committed a disqualifying serious infraction in the year prior to filing a petition for early release, and those sentenced to aggravated first degree murder or specified sex crimes.

The ISRB argues that the statute does not apply to Brooks because RCW 9.94A.730 is part of the SRA and states, "[n]otwithstanding any other provision of this chapter." However, while chapter 9.94A RCW is colloquially known as the SRA, the actual legislative act modified other sections of our criminal code outside of chapter 9.94A RCW, including sections within chapter 9.95 RCW, the indeterminate sentencing section. *See* LAWS OF 1981, ch. 137, §§ 24, 32-33, 39. Perhaps more importantly, chapter 9.94A RCW is the portion of the revised code of Washington where the vast majority of our sentencing statutes are codified. While scattered sentencing provisions are found in many other chapters, it is the sensible place to locate general sentencing statutes.

*In re Pers. Restraint of Brooks*, No. 97689-9

The ISRB also argues that Brooks is not entitled to a *Miller*-fix hearing because he is already entitled to parole hearings.[2]  But these hearings are not the functional equivalents of each other.  A hearing under RCW 9.94A.730 includes a statutory presumption of early release.  The ISRB "*shall order* the person released" unless the ISRB determines "by a preponderance of the evidence" that it is "more likely than not that the person will commit new criminal law violations if released."  RCW 9.94A.730(3) (emphasis added).  This statutory presumption is a duty that limits the discretion of the ISRB.  By contrast, a parole hearing under RCW 9.95.100 places the burden on the incarcerated person to demonstrate rehabilitation, and the ISRB "*shall not*" grant parole unless it finds "rehabilitation has been complete and he or she is a fit subject for release."  RCW 9.95.100 (emphasis added).  While the ISRB "shall give public safety considerations the highest priority" in both types of hearings, the consideration of public safety does not override the presumption of release in RCW 9.94A.730 and is, in fact, related to it.  *Compare* RCW 9.95.100, *with* RCW 9.94A.730(3).

We stress that a hearing under RCW 9.94A.730 is not a resentencing.  Instead, an early release hearing looks to the future and focuses on one's likelihood

---

[2] The ISRB also argues that applying RCW 9.94A.730 to Brooks does not serve the purpose of the statute, which is to remedy the constitutional problem of mandating life sentences without the possibility of parole for children.  But while that was clearly the impetus of the statute, the legislature did not limit it to only those sentences that would have been unconstitutional under *Miller*.

8

*In re Pers. Restraint of Brooks*, No. 97689-9

of reoffending. *See State v. Delbosque*, 195 Wn.2d 106, 122, 456 P.3d 806 (2020)

(discussing *United States v. Briones*, 929 F.3d 1057, 1066 (9th Cir. 2019)). We

also note that the statute does not guarantee that the petitioner will be released.

But in light of *Miller*, our legislature plainly intended to provide a meaningful

opportunity for early release.[3]  567 U.S. at 479.

Based on the *Miller*-fix statute's plain language, we conclude that it applies

to Brooks. Under the plain language of RCW 9.94A.730, "any person" who was

convicted of one or more crimes prior to their 18th birthday is entitled to a release

hearing so long as they have served at least 20 years under the statute and do not

meet any of the express exclusions. Brooks meets these requirements.

Accordingly, Brooks must be afforded a release hearing under RCW 9.94A.730.[4]

---

[3] As our understanding of the differences between children and adults for sentencing purposes has evolved, so too have our statutes and case law. A number of Washington cases previously upheld life sentences without the possibility of parole for juveniles. *State v. Stevenson*, 55 Wn. App. 725, 737-38, 780 P.2d 873 (1989) (holding that a mandatory life sentence without the possibility of parole for a juvenile is "not an unconstitutional punishment" under the Eighth Amendment); *State v. Cummings*, 44 Wn. App. 146, 153-54, 721 P.2d 545 (1986) (affirming a mandatory life sentence without parole and holding that a juvenile defendant has no right to have mitigating factors like her youth considered at sentencing); *State v. Forrester*, 21 Wn. App. 855, 870-71, 587 P.2d 179 (1978) (holding that a mandatory life sentence without parole did not violate the Eighth Amendment's prohibition on cruel and unusual punishment). These holdings from *Stevenson*, *Cummings*, and *Forrester* are no longer good law after *Miller* and subsequent Washington cases. *See Miller*, 567 U.S. at 479 (the Eighth Amendment forbids a juvenile to be sentenced to mandatory life in prison without the possibility of parole); *Bassett*, 192 Wn.2d at 90 (sentencing juveniles to life without parole or early release is cruel punishment under art. I, § 14 of the Washington constitution); *Houston-Sconiers*, 188 Wn.2d at 21 (courts must consider mitigating qualities of youth at juvenile sentencing).

[4] Given our resolution on statutory grounds, we do not resolve the parties' constitutional arguments. We grant Brooks' motion to strike "Argument D" of the ISRB's supplemental brief discussing a 2018 psychological evaluation that was never submitted by the parties nor included

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

CONCLUSION

Our legislature enacted special protections for juveniles sentenced to lengthy prison terms. By its plain language, RCW 9.94A.730 applies to Brooks' sentence. The ISRB must provide Brooks with a hearing under RCW 9.94A.730 that presumes release. Accordingly, we grant the PRP, reverse the Court of Appeals, and remand to the ISRB for a hearing consistent with this opinion.

_____
González, C.J.

WE CONCUR:

_____
Johnson, J.

_____
Gordon McCloud, J.

_____
Madsen, J.

_____
Yu, J.

_____
Owens, J.

_____
Montoya-Lewis, J.

_____
Stephens, J.

_____
Whitener, J.

---

in the record. We also deny the ISRB's request to supplement the record with the missing appendix as it is not relevant to issues before us.

10